Good morning, Your Honors. Good morning, Your Honors. May it please the Court, Bartis Vakili for Patrick Douglas. I'll watch my time. I'm going to aim to reserve two minutes for rebuttal. Instead, I'd like to focus on the two elements of the Strickland claim in particular. How trial counsel's investigation into Mr. Douglas' mental illness was deficient under prevailing professional standards, and how that failure prejudiced him, and, under EDPA, how the California Court of Appeals' decision was unreasonable in holding otherwise. On the deficient performance element, Your Honor, what the California Court of Appeals held was this wasn't deficient. His investigation into the mental illness issues wasn't deficient because he had reviewed some medical records sufficient to put him, to make him not, quote, not entirely unaware of the issue. But the Supreme Court in Wiggins has expressly rejected this rationale as being a sufficient investigation. In Wiggins, just like here, there were records indicating relevant evidence to trial counsel. There was social background information. It was in the pre-sentence report. It was DSS records. And the Maryland Court of Appeals there said that's enough for counsel to make an informed tactical decision not to have pursued it any further. Counsel was aware of it, and that was enough. And Wiggins, the Supreme Court in Wiggins rejected that. The records put counsel on notice that there was an issue that, and that there was a duty to investigate further, including by consulting an expert, in that case a forensic social worker. And so applying that rationale, this Court, in case after case after case, in Beemore, in Noguera, in Whedon, even in the case of the government sites, Douglas and others, counsel is aware of mental health issues, but that awareness doesn't end the investigation. It triggers the need for further investigation. Essentially, counsel, trial counsel has to investigate under the ABA guidelines to make a sufficient determination that is clearly not relevant. And that's just not what counsel did here under Wiggins. Ginsburg. Well, I think the, at least my reading of the record really highlights this deficiency in terms of the duty to investigate and go further because the issue was on the table. But then because we're here on habeas review, as you know, we had a lot of procedural and substantive hurdles to jump through. So looking at the standard under the prejudice prong, the question being, but for these errors, would the result have been different? So it would help me if you would address that standard that we need to consider if we're looking here on the guilt phase. Yes, Your Honor. And so at the guilt phase, the standard is, but for counsel's errors, does the court have, is it sufficient to undermine the court's confidence that even one juror, one, would have changed their mind on the issue of mental state in this case had they gotten the whole picture of mental illness? So that's the standard. And then, yes, with EDPA, was it unreasonable for the California Court of Appeals to hold otherwise? And the answer is yes. And so to understand that, Your Honor, we have to understand that this is a specific intent crime with an aggravator for premeditation and deliberation. These are the mental states at issue. And you said, I'm going to kill this bitch, right? And I'm going to go on a killing spree, so we have to kind of figure that in, right? Right. And so the California Court of Appeals says, Dr. Francesco's testimony is general and vague and not really enough to get over this piece of evidence. That was unreasonable in light of the state of the law, Your Honor. The California Court of Appeals in two separate cases has considered similarly, I think, damning evidence on specific intent in premeditation in people v. Cortez and people v. Herrera. And in those cases, for instance, in people v. Cortez, there was a stabbing. The defendant's own witness said, I pulled my friend out of there. There had been an altercation with the victim. He said, I pulled my friend out of there, and my friend told me, I'm going to handle this guy. And he lifts up his shirt and he shows the knife. And then moments later, he goes in, and there's a stabbing, and the victim dies. Right? So you have this sort of damning evidence of intent with the showing of the knife. Trial counsel in Cortez wanted to admit evidence, submit evidence of dissociation, which is consistent with what Dr. Francesco wanted to do, and the trial court said no. And the California Court of Appeals reversed, said this was prejudicial. It said specifically, dissociative states prevent persons from forming intent. An appellate may have been in such a state. Dissociative states give people, mean that people have lack of conscious volition. This is part of Dr. DeFrancesco's testimony, that Mr. Douglas suffered from PTSD, that in September he had suffered this gruesome beating. He was hospitalized. He suffered head injuries. A few weeks later, he was in a car crash that was investigated as a suicide attempt. And then a month later, these attacks happened. And so, yes, there's this evidence that isn't good for Mr. Douglas. But this evidence of dissociation in Pupil v. Cortez had to be heard. There, the court reversed. Herrera is almost similar. In Herrera, it's another stabbing. It happens in a car, like here. And there, the defendant drives to a CVS with the victim in his car, their friends. And there had been an altercation. Things had gotten heated. He goes to the CVS, buys a knife. Now, he testifies he bought the knife because he had to cook the next day. But he buys a knife at CVS, buys scissors at CVS. At CVS, cuts the knife free from its packaging and then puts it in his pocket and brings it into the car. That's pretty darn bad evidence in terms of intent. And moments later, there's an altercation. The victim runs from the car. The defendant chases him out and stabs him 26 times. Again, counsel wanted to submit evidence of dissociative state on the intent issue. Again, the trial court said no. And again, a different California court of appeals. Now we have two California courts of appeals saying that's prejudicial. Instead, specifically, the denial left the jury no basis to infer that Herrera had lapsed into a dissociative state in which he might not have deliberately premeditated the infliction of wounds on the victim. And it allowed the prosecutor to argue that there was no alternative explanation for the crimes. And that's precisely what happened here. Here, the prosecution's theory was that this evidence of the video put Mr. Douglas into what prosecutors would call indiscriminate rage. And that's the motive, right? And so without anything to explain that, the jury had nothing else to go on. And this evidence of intermittent explosive disorder, PTSD, that would have given the jury something to hang their hat on as a more precise verdict to find. Now, it's important to know that sufficiency, that video, Your Honor, may support a finding of intent and premeditation. Now, remember, deliberation is formed at or arrived at or determined upon as a result of careful thought and weighing of the considerations for and against the proposed action. That's what we require for deliberation. That comes from People v. Houston. That's the California Supreme Court. It's also in the jury instructions. It's at 117 of the record. And so you triggered something in my mind about the footage and the body cam. That's – I don't find it in the record. Is it in the record? There's a transcript of the video, Your Honor. The video itself is not in the record. Okay. That's what I thought. So the video is not part of the record. It's not part of the record. But the transcript of the video is. And the transcript of the video indicates he's – it takes place a couple minutes before the first attack – after the first attack. The attacks are about 12 minutes apart. It takes place a couple minutes after the first attack on – presumably on his way to the second. And he's yelling at somebody, right, into his phone, saying, I'm going to go on a killing spree. He says something like, I'm no – forgive the language. I'm no bitch. You'll see. I'm going to go on a killing spree. And the government's argument that that was premeditation, that was deliberation, was exactly what he said. There was a plan. There was nothing else to give the jury here. But that's – that's really thin on careful thought, weighing of considerations for and against. And if the jury heard, hey, this person suffers from intermittent explosive disorder, one of the symptoms, as Dr. Francesco told us, is this urge to do violence that's not premeditated, that can't be controlled. He also suffers from PTSD and might have been in an associative state because he doesn't remember any of what happened. Under People v. Herrera, People v. Cortez, the jury should have heard those things. And it's unreasonable for the California Court of Appeals, in light of what its sister courts did, to say otherwise. Now, as I was saying before, the record might support a finding of specific intent, bless you, Your Honor, based on the video, certainly. But that's not the question. That's going to be the case in virtually all of these appeals. Someone was convicted. There is sufficient evidence. That's not the standard. The standard of the evidence is whether this – or whether the California Court of Appeals could – would be, you know, under – their confidence would be undermined that even one jury member would have changed their mind. And for this court to determine whether it's unreasonable for the court to do so. And I point the court to Grace v. Herzog. It's a decision of this court. Now, it's an IEC claim on Grace v. Herzog on a failure to instruct on a lesser included. So it's not exactly apples to apples. But the court acknowledges there the phenomenon that exists, that juries, when presented with evidence and options, not just a black or white guilty or not guilty, but, you know, guilty, a lesser included, an aggravator, these options, and given evidence, they'll tend to fit the conviction to the crime in the way that makes most sense from a justice standpoint. And Grace acknowledges this happens. And so the sufficiency standard isn't really what we're looking at. Is would one of these jurors have changed their mind? Maybe. Right? And is it unreasonable to think one wouldn't? And given the evidence, I'd suggest that it's unreasonable to say that it was not going to happen to even one juror. If I could turn for a moment to sentencing, the presence at sentencing, I do think this court can get to the issue of presence at sentencing, notwithstanding that it wasn't precisely raised at the state court level. Now, perhaps now, about a month ago, this court issued an opinion in Atkins v. Bean, I think Judge Callahan writing for the majority, that I think takes off the table that the failure to investigate at sentencing is a standalone ground for ineffective assistance. But I think this court can and should and actually must consider the presence at sentencing as part of the presence analysis for the failure to investigate that's undoubtedly preserved. And so in Brown v. Baker, this court says, while an individual claiming IAC must identify the acts or omissions of counsel that are alleged not to have been the result of a reasonable professional judgment, that, quote Strickland, the court considers counsel's conduct as a whole to determine whether it was constitutionally adequate. Strickland itself says, in making a prejudice determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or the jury. And this court held in Beemore, the duty to investigate pervades all aspects. You must investigate for purposes of guilt phase and sentencing phase because a strategy that might not be, even if a long shot at the guilt phase, might be the superior choice in view of the impending penalty phase. And so really, when viewing prejudice, the court should look holistically at what happened. Yes, yes, the petitioner has to point at specific conduct that fell short. That's the exhaustion. But in determining the whole IAC claim of prejudice, the court should look at the totality of the circumstances. And with that, I saved my two minutes. We'll go ahead and round up the two minutes, but you'll get your two. Thank you. May it please the Court, Deputy Attorney General Amanda Lloyd, on behalf of Respondent. Douglas stabbed two females in two separate violent attacks, during which he clearly stated his intent to kill both victims. But his victims survived. Not only were they able to testify against him, but Douglas recorded a video between the two attacks, proclaiming his intent to go on a killing spree, which ultimately ended in his attempt to run over a sheriff's deputy and a high-speed chase. The State Courts denied Douglas relief from his convictions on direct appeal and habeas. And because the State Courts reasonably applied United States Supreme Court law, the District Court's denial of Douglas' habeas petition should be affirmed. While Douglas raises two claims regarding... First, the State Courts reasonably applied Strickland in rejecting Douglas' ineffective assistance of counsel claims. While Douglas raises two claims on appeal, both failure to investigate and present a diminished actuality defense and failure to present mental health evidence at sentencing, only the former is properly before this Court. Douglas did not mention mitigation or sentencing anywhere in his State or Federal habeas petitions. So it is unexhausted and also not cognizable before this Court because it was not raised below. And Douglas cannot overcome the strong presumption that his counsel acted within the wide range of reasonable professional assistance. Counsel is deficient only if no competent attorney would have taken the same action. And here, Douglas' counsel was aware of prior counsel's request for psychological evaluation and why. Counsel was aware of his diagnoses, and counsel had met with Douglas ten times, more than ten times, and had lengthy discussions about the merits of the case. As the State Courts found, Douglas failed to identify any other evidence that trial counsel was unaware of that would support a viable mental health defense. And it's particularly with diminished actuality. While the doctor could have testified as to the diagnoses and definitions of the mental illnesses, which is what he stated in his declaration, the only way to connect those diagnoses and definitions to what happened during the actual crime would have been to put Douglas on the stand. And that was risky. And the trial counsel made a tactical decision that going with that defense was not the best decision considering the video evidence of Douglas' intent to kill. But even if Douglas was somehow, or Douglas' counsel was deficient, as this Court stated in Beemore, a tactical decision may constitute constitutionally adequate representation, even if, in hindsight, a different defense might have fared better. So here, defense counsel had basically two bad defenses to choose from. One, identity, where he didn't have to put Douglas on the stand. And alternatively, going with the deficient actuality, where he would have to put Douglas on the stand. But even if counsel was deficient in some way, Douglas cannot show a reasonable probability that but for counsel's unprofessional errors, the result of the trial would have been different. And this is, the likelihood of a different outcome must be substantial, not just conceivable. And here we have facts showing that Douglas made a series of choices that night. He chose to be out at 2.30 in the morning with a knife armed. He chose to pick up the first victim and drive her around town. When she asked to get out of the car due to his driving, he chose to take her to a parking lot where he parked the car, locked the doors, walked around to the trunk, and said, I am going to kill this bitch. He then proceeded to the passenger side window and stabbed her approximately 15 times, pulled her out of the car, and left her there to bleed as he drove away to his next victim. On his way, he made this video where he showed the blood all over the passenger side. He showed himself holding a knife and driving down the road. And he stated again, quote, I'm about to go on a killing spree. I'm going to kill everyone I can kill. You'll never see me again. And when he arrived at his second destination, he took the same knife. He walked up to the second victim who was a delivery driver, simply delivering her goods to the 7-Eleven, and he stabbed her twice in the side and once in the arm and took off again, leaving her there bleeding to death. This is a series of choices that Douglas made, showing that his intent that night was to kill these two women and probably more if the deputies had not caught up with him and eventually tracked him down. As to the second issue before this court, I don't know if the court wants to reach the Chapman issue as well. I didn't really go too far into it. I had just a practical question, and I don't mean to shade anything on my view of it, but let's say they happen to be right on that issue. He was convicted of a lot of things here. So what would the practical effect be if there were a Chapman error, and I'm talking EDBA-Chapman error, which I'm not suggesting. I'm just trying to understand in a state court, it would go back to resentencing, but what would the practical effect be? Because I don't mean to diminish the severity of that conviction, but he did a lot of other stuff that night that was far worse than the car offense. So what would the bottom line be? I don't know exactly what the bottom line would be practically, but I don't think the court needs to go there because it is harmless beyond reasonable doubt. I'm just trying to understand that. I don't mean to diminish it, but it's like murder, murder, murder, attempted murder, attempted murder, and then kind of drove with the car. This case was not about the car. This case was really about the attempted murder. So I was just trying to think from a practical. Practically, it probably would not mean much in terms of resentencing or something, yes, but again, we would argue that no fair-minded jurist could, sorry, that Douglas has not shown that no fair-minded jurist could agree with the state's application of the federal harmlessness standard. Well, I mean, one thing that the state court said that was a little troubling is that, well, it's unlikely the jury would have found this. That's not quite the standard, right? No, but it did follow up right after that immediately with the correct standard, and you can tell by looking at the totality of the decision that the court applied the right standard and may have misspoken as to the unlikelyness there. Everybody seemed to agree that you can't use the car as saying it's an inherently dangerous. Correct, and neither counsel argued that the car was inherently dangerous on its own, but that the way that Douglas used the car by driving it directly at the deputy who was standing in his stance, gun pointed, telling him to stop, and driving it directly at him, the only way that the deputy was not hit was because he was able to step out of the way, and, of course, the car went by him so closely that he was able to kick it on its way by. So because Douglas has failed to show that the state courts unreasonably applied Strickland and Chapman or that their decisions were based on an unreasonable determination of the facts, we ask this Court to affirm. Thank you, counsel. Thank you, Your Honors, and I'll be brief here. You know, counsel here essentially made our case for us about why trial counsel's choice of mistaken identity defense was futile. There was nowhere to go with that defense. What counsel had to have done under the ABA standards was investigate the mental health issues first, then make a determination as a trial strategy with in mind the fact that this client was facing two life sentences, and maybe the right strategy under BMOR is you sort of walk in there and say, okay, they got us, but here's the reasons why, and let's try to lighten the sentence here. You have to investigate to inform your trial strategy, and that's just not what was done here. Just really briefly on the Chapman issue, the issue turns on what it means to use a car as a deadly weapon, and the definition is, is it used in a way that's likely, likely to result in death or great bodily harm, substantial injury, and that's a really fact-dependent inquiry. I don't know how many times, Your Honor, I've driven my car at 5 to 10 miles an hour since I've caught this case. Many, many, many times. It's really hard to imagine that the deputy, a former Marine, looking right at the defendant, driving 5 to 10 miles an hour, sort of kicking the car as it's coming to him, that it was likely he was going to suffer harm. Assaulted, an assault, yes, but assault is likely to suffer great bodily injury. I don't know that that goes there. The last point on the practicalities, Your Honor, there are crimes here for which he was convicted that he did not appeal. There are lesser-included offenses here for which the mental state arguments won't work. Mr. Douglas, he said from the beginning, he said in the mitigation, he said it when he allocuted at sentencing, I understand something egregious was done here and a punishment is deserved. And all we're asking for in this case, Your Honor, is that he be provided the opportunity to give all of the relevant evidence so that the conviction and the punishment fit the crime. Thank you. All right, thank you, counsel. Thanks to both of you for your briefing and argument. This matter is submitted. I want to thank you, counsel, today for doing a good job before the law students. It's always rough when they don't, but that was not the case today. So we're going to adjourn here, but my understanding is that for those who want to stay on, some law clerks from our court are going to do some question and answer for a little bit, and then we may come back out. We'll see how much time we have left before then. We are adjourned. Thank you, everybody.
judges: WALLACE, McKEOWN, OWENS